Good morning, your honors. Richard Mann for petitioner John Schiessl. Schiessl. Rhymes with whistle. Way to remember that. The problem with this case, and the reason it should be overturned, the ALJ and the BRB used an OSHA-based standard for injurious stimuli. That is not the standard that is used under the Longshore Act. Use of this OSHA noise survey is to rebut the presumption under Section 20A without a clear analysis from the administrative law judge creates a problem due to relevance. The analysis has to be there in order to rise to the level of substantial evidence to rebut the presumption. We need a clear and concise explication of how OSHA noise surveys are evidence that relate to petitioners' exposure to noise in the workplace. And here we simply don't have that. If we don't have a strict adherence to the Section 20A presumption, then when it comes to cumulative hearing loss cases such as this, compensation will never be allowed under the Longshore Act to cumulative trauma hearing loss claimants. I'm not sure I totally follow you. Tell me more about this OSHA thing. Let me put it this way. There's two types of noise exposure in a work site. The first type is based on factory noise. We call it factory hum. That is where you work around machinery that's constantly running. On a day-to-day basis, it's not loud enough machinery that there's cause for concern, but day in, day out, month in, month out, year after year, a worker's exposure to that type of noise takes a toll on his hearing. The OSHA-based standard, and the lead case in the Longshore is the Damiano case from 1998. The OSHA-based noise surveys are pretty good at determining the type of noise exposure to a worker in that kind of factory hum exposure setting. You can show based on as long as those noise surveys are taken at periodic times throughout the year and evidence is put on that that noise is consistent from year to year, year in and year out, they're a pretty good basis. However, what we have here, Mr. Schissel is a machinist. He's been a machinist, a mechanic, for 30 years for this employer. He doesn't work around that kind of noise when he works. The kind of noise he's exposed to we call impact noise, loud noises of high decibel, short duration. Okay, I've got all that, but tell me what the problem is. You say there's a problem somehow related to OSHA or not related to OSHA. What's the problem? The OSHA standard, in fact the OSHA regulation 1910 itself, says that out of an OSHA context this should not be used to define what injurious stimuli is. All the doctors in this case agree that Mr. Schissel has workplace hearing loss, noise exposure, hearing loss. There's no intervening causes. There's no noise that he was exposed to outside of the workplace. But my understanding is the question in front of us, putting to one side the steps one, two, three, but the hearing loss question is what was his hearing loss when he quit working for this employer? And I think that date is 1999. That date is 2008. 2008. The 1999 is one of the bigger problems in the case and also represents error. 1999 came about because that's when the employer began doing noise surveys. The problem is those noise surveys don't apply to the petitioner. Those noise surveys were taken of forklift operators who have an engine behind their head eight hours a day and they drive around in an open warehouse moving cargo about. That's not the kind of noise exposure that the petitioner is subjected to. He's subjected to, and by the way, every longshoreman virtually working up and down the West Coast is also exposed to noise only in the form of impact sounds. Their noise comes in the form of cargo banging against the bulkhead in a hold or a lift truck machine turning on as they walk by, the siren on a gantry crane, those kind of noises. They are not exposed to steady hum noises. So if we allow the OSHA survey-based approach, then virtually every one of these claimants for hearing loss will be unable to prove where they got their hearing loss. Counsel, if I may, correct me if I'm wrong. I understand that your client switched jobs from tugs to the machine shop at one point. Is that correct? That's actually a red herring, Your Honor. It may be a red herring, but is it correct? It's correct in the sense that he left the tugboat machine shop and went to the lift machine shop about 1997, 1998. Yes, and at that time, did he have any hearing loss that would qualify as a compensable impairment? No, he did not. No. No. All right, and then there seems to be evidence in the record that the noise to which he was exposed thereafter wasn't sufficient to cause hearing loss, that it was caused by other factors. What's the problem with that? The problem with that is that these noise surveys are so remote, they don't inform us in any way as to what noise this petitioner was exposed to from 2000 to 2008. The noise that he's exposed to didn't come from the type of noise that's recorded in these noise surveys. The other bit of evidence we have is age-related hearing loss, presbycusis. And if you take a look, in fact, in Petitioner's Brief, Exhibit A presents in a chart all the test scores. This individual has 14, 15 hearing tests, and they're all laid out. That's the best evidence in this case, and that evidence shows that there's no age-related hearing loss between 1989 and 2008 when he left the workplace. However, if you look at the levels where noise registers, 3,000 and 4,000 levels, the 3K and 4K levels, they go dramatically down. Those are the levels. How would you summarize Dr. Hodgkin's testimony with respect to your client's hearing loss? I would say that it's off the mark, Dr. Hodgkin's testimony. I didn't ask you to characterize it. I asked you to summarize what he said about your client's hearing loss. What Dr. Hodgkin said was that my client was a lift operator, and therefore these noise surveys were pertinent to him. Therefore, his opinion is informed by the noise surveys, and he thinks that since there is no levels of noise from 2000 to 2008 that Petitioner was subjected to that could have caused any additional hearing loss, we had to prove that it was from work-related noise instead of his conjectural basis, speculative basis, such as age-related, genetic-related. He has no evidence of any of these, but it must be that because it's not work-related hearing loss. So how would you summarize the infirmity with respect to Hodgkin's testimony such that we shouldn't pay any attention to it as compared to Lipman, for example? The cumulative hearing loss case involves a claimant who, at the submission of a claim, has hearing tests that evidence work-related hearing loss. At that point, in fact, Mr. Schissel, he did everything right. He went to Dr. Trev, and he filed only one hearing loss claim. That's a fact that was completely missed by the ALJ and the BRB. He didn't file a claim in 1999 or 2000. Why? Because he has no hearing loss. He filed a claim in 2008 as he's retiring from the industry. He came to a long, short 30 years, truly. We set him up with a doctor, and the doctor has two bases for the report that he put in that he was subjected to work-related noise, and that caused his hearing loss. Are you talking about Dr. Lipman now when you say set him up with a doctor? No, that's Dr. Trev. That's Trev. How does Lipman? Well, Trev doesn't necessarily support you if I read the record right, but how does Lipman come into the whole game? Trev does support us 100%. What happened is Trev put out a report that says this man has work-related hearing loss. What he says is I can't tell you exactly when he got this work-related hearing loss. That's the very nature of cumulative trauma hearing loss. It occurs over a period of years. Just like the 1991 Port of Portland case we called Don Ronnie, if presbycusis combines with agreed work-related hearing loss, the entire disability is compensable. That's the same case we have here. So all this goes back to the question of whether these tests are valid or not in terms of establishing a noise that would have caused hearing loss. That and the fact that the only other basis for rebutting the presumption is the speculative notion that there's some presbycusis at play, and for the last 20-plus years, that has not been the standard that we've lived by. We've lived by a standard that says as long as there's work-related hearing loss, it can combine with presbycusis because we can't partition out and percentage out how much is based on one or the other. What do we do with, and I'll just read from his written report rather than from his testimony, Dr. Hodgson saying that because Mr. Fissel's hearing loss increased in all frequencies, including the lower frequencies, he concludes that the hearing loss is not due to work noise because the area from 500 to about 2,000 hertz is not significantly affected by noise. So it's apparent that noise didn't contribute to the hearing loss after 1999. What do we do with that? The problem with that is a simple look at the evidence disproves it. The three tests that Dr. Hodgson are referring to, and in fact, on page 5 of the BRB decision, it's mentioned there, that Dr. Hodgson's testimony is well-informed because he took a look at the last hearing exams, the audiograms, but what they missed is that every one of those audiograms was taken after Mr. Fissel retired from the workforce. Let me ask you this. I may be wrong, but it seems to me that procedurally where we are is that you don't, that there's no challenge on the question on the first step, that is to say there's a presumption of work-related hearing loss. There's no question on the third step, assuming that the presumption has been rebutted, that the ALJ's finding is supported. We're fighting about whether or not there has been rebuttal. Is that right? Is that where we are? Well, with respect, I don't believe that's so. If the presumption is rebutted, then the claimant has to prove by preponderance of the evidence, but the result can't be absurd or illogical, and this evidence doesn't support the judge's decision. I've got that now. So you're arguing that neither was it rebutted, nor if it were rebutted, is it supported by substantial evidence. That's correct, and the reason was is the use of these noise surveys that don't apply in any way to claimant. As to step two on the rebuttal, it seems to me that it's enough that it's rebutted. Dr. Hodgson, you may or may not be right. I understand that you're saying that he's not right, but he's got what looks to me as based upon his reading of a hearing test that the loss of hearing that we're experiencing after 1999 is not work-related. That's what he says. That's what he says. So it seems to me that it may or may not be right for purposes of that step two that strikes me as a rebuttal enough to get rid of the presumption. Why am I wrong on that? Because in order to rebut the presumption, and particularly on cumulative trauma cases, of which hearing loss is a prime example, we need to have specific and comprehensive evidence, so say the case law, that is sufficient to sever the relationship between the injury and the workplace. Why isn't this sufficient to sever if believed? Because it's based on two things. One, noise surveys that don't apply to my guy in any way. No, no. And second. Excuse me. As I read it, that's not based on noise surveys. That's based on a test of where his hearing loss occurs. That's based on a hearing test. But what I just read to you doesn't talk about surveys. It's based on three hearing exams that occurred after the petitioner left the workplace. How can we say that there is evidence of presbycusis, age-related hearing loss, when we have the test before you and they don't show any of that evidence? At the low levels, if you look at the 1989 test and then you look at the 2005 test, they're virtually the same. He does not have age-related hearing loss until after he retires. Okay. You know, you've got about a minute and a half. Why don't we hear from the other side and then we'll give you a chance to reply. Okay. Thank you. May it please the Court, I'm Norman Cole, representing the respondent, Georgia Pacific. Your Honor, a little while ago I identified the three steps in analysis of a case like this, the one that has the presumption been invoked, two, has it been rebutted, three, weigh the evidence. And as I read the way that Petitioner has framed the issue, it's only in number two, has the employer produced sufficient evidence to rebut the presumption. There's no issue here about what happens if that presumption has been rebutted. That was never raised in the briefs. And, by the way, in the Petitioner's brief, in fact, in the reply brief, there is an argument raised for the first time contesting the validity of some of the earlier audiograms through 1999, contending that they didn't satisfy a standard of presumptive validity. That was never raised at the hearing level. That was never raised at the Board. The validity of those audiograms were never previously contested. And, in fact, there's testimony in the record that claimants' excerpts of record page 172 from Dr. Hodgson that he accepts as probable the extent of permanent impairment under the AMA guides through 1999 was 0 percent. Your Honor, the Supreme Court in Bath Iron Works v. Directors said that hearing loss is an injury. That means when there is injurious noise, there is an injury. And when the noise ends, the injury ends. My client has conceded that up to December of 1999. You know, that can't be right, the way you said it. When the noise ends, the injury ends. No. I mean, if you cut off my arm, when you finished cutting, I remain injured. You do, but you have. So when you say when the noise stopped, the injury ends. No, if the noise has adversely affected my hearing, my hearing is still adversely affected. I have been injured. Now, that may be a quibble, but it seems to me that the injury continues once inflicted. But the difference in a hearing loss claim is that if your hearing loss continues to deteriorate after that noise ends, the reason it's deteriorated is for a reason other than that injurious noise. Well, of course, that's true, too. Right. So in a Longshore case like this, we evaluate the extent of disability based on the time of the last injurious exposure in maritime employment. And that, we contend, was in December of 1999 because the noise that the Petitioner experienced thereafter was not injurious noise. Well, that may or may not be true. Well, that was the issue that was presented, and that was the finding from the judge. And what I'd like to note is that the reason why there is support in the record to overcome the presumption and, by the way, that's a burden we don't have to prove by a preponderance that there was no noise. It's not by a preponderance issue. It's only the amount of evidence that a reasonable mind could accept. That standard was discussed in the Plaisance case from the Fifth Circuit, indicating that this is a lesser standard than proving by a preponderance. So what do we have? Well, first, as the Court has inquired earlier, there is evidence that there was loss in frequencies after 1999, including the lower frequencies unaffected by noise. So there was noise and there was reduction in all frequencies after that date, and that indicated that the loss overall would not be due to noise. And Dr. Trev agreed with that analysis and claimed it has been parsing this by looking only at the surveys that were done from 2005 to 2010 instead of going back to 1999, which is what the doctors looked at, both Dr. Hodgson and Dr. Trev. It was significant to them that all frequencies had deteriorated, suggesting no connection with workplace noise. Counsel has said, well, there was impact noise, there was noise from a hammer. Well, Dr. Hodgson testified that there must be 140 decibels to cause any hearing loss from a single incident sort of event. And although the claimant said he occasionally used ratchet guns, Dr. Hodgson said that creates 115 decibels. Hammer dropping could be 120 decibels. A grinder, 95 decibels. That's in Excerpts of Record, page 194. So even if we accept this premise that, oh, he had these single impact sort of situations, not enough noise from those events to be contributing to hearing loss. The noise that he experienced after December 1999 was different than the noise that he had experienced as a tugboat mechanic, which he described, by the way, as some of the loudest noise you could imagine if you were on a tugboat and it was going at full throttle and he was working on it. That ended when he went to work as a lift truck mechanic. And in that capacity, for a little while, there was an adjoining pallet shop where they made some noise. But that pallet shop was closed down and outsourced before December of 1999 when he had an audiogram. So after December 1999, no more pallet shop. The employers also said that there were some changes in the maintenance activities. There were lift trucks brought in that were quieter, some other changes that were made. That's cited in the brief as well. So there's a little bit less noise from that. He worked predominantly on a swing shift at Rivergate where he would be working alone so he wouldn't have opportunities to have noise from other workers that were there. And some of his co-workers as well had testified that one of them said that noise, Mr. Bailey said, that noise from lift truck, this is a co-worker of his, did the same job. He would call noise from lift truck operation, driving lift trucks, at kind of a six on a ten-point scale, whereas noise from working in a lift truck shop was four. And Mr. Bailey said that there were some days when you even rarely had to use hearing protection or felt the need to do so. Now, council has said, oh, there's this OSHA standard that was applied. No. OSHA may say that if a worker is exposed to 85 decibels of noise on an eight-hour time weighted average, it's a mechanism kind of considering all the noise over eight hours, then the employer must initiate a hearing conservation program and they have to do some periodic testing of their workers and that sort of thing. That's their standard. But Dr. Hodgson testified and Dr. Trev agreed that this standard, which OSHA happens to have adopted, is based on science that says that if you are not exposed to, if you are exposed to less than 85 decibels of noise on an eight-hour time weighted average, that exposure is not injurious. What they're saying is, as a matter of science, medicine, an exposure less than that amount is not injurious noise exposure. Now, it's nice that OSHA happens to have that standard for purposes of demonstrating a hearing conservation program, but that's coincidental. The issue here is that Dr. Hodgson and Dr. Trev have both said that this is the, this is a medical standard that indicates a lack of injurious exposure. So there are noise surveys that were done after 1999, well, beginning 1999, that looked at 167 workers. Seven of them were lift truck mechanics, like the petitioner. Most of them were lift truck drivers. There's evidence that the noise from lift truck drivers is louder. There's more of it than there is from the lift truck mechanics. None of that evidence, with some exceptions for workers in kind of a different category, indicated a noise level beyond the 85 decibels for an eight-hour time weighted average survey. So that enhanced, that supported the conclusions that Dr. Hodgson and Dr. Trev had made about the lack of injurious noise exposure after December 1, 1999. Going back for a moment to this argument that counsel had made in brief, that you cannot exclusively rely on noise exposures to rebut the presumption. First, we're not exclusively relying on the noise exposures. And Dr. — and Judge Clark, administrative law judge, indicated that he wasn't. And I've already outlined the other evidence besides the noise exposures, which indicated that there was, there's a reason to think he wasn't exposed to injurious noise exposure after December 1, 1999. But counsel misreads the cases because those cases, the Diamano case, merely holds that a judge looking at a case has discretion to accept or reject a noise survey, depending on the evidence that's presented in that case. There's no statement in that case that says that if a judge only relies on a noise survey, then that's not enough to rebut a presumption. And the other case, Iovelli, was unpublished. What's at stake practically here? My understanding is that it's uncontested that Mr. Shiesel is entitled to hearing aids and ongoing medical care. Is that right? That's correct. And so what's at stake then in this case beyond that? Well, if under the Longshore Act, the impairment, and therefore the disability award, is measured by the EMA guides. The EMA guides look to the change in frequency at the lower frequencies, the 500,000, 3,000. So he didn't have those changes. You can give me a quicker answer. I suspect we're talking money. We're talking money. How much? Well, I'm sorry I don't have the dollar amount, but I think there was, the rating was something in the neighborhood of 20-something or other percent by the time he had his last audiogram. So he's looking for, he would be looking for an award based on that percent, the most recent percent that he had based on the earnings that he had when he retired rather than earnings that he had back in 1999, which we contend is his date of injury. So he had zero percent when we contend the noise, the injurious noise ended. He had some percent when he retired. He wants the PPD award. The employer says you're not entitled to the PPD award because the change in your rating is a consequence of things other than the injurious noise exposure that you had previously. Yeah, yeah, no, I understood all that, but you don't have a dollar figure. I don't have it in front of me, but it's easily found. Counsel, the BRB makes an interesting statement here. We agree with claimant that the ALJ erred in stating that the issue in the case is weather, and then you probably read it. The ALJ started out with a misunderstanding of the issue. Is that of no moment? First of all, the ALJ did not misstate the issue. The ALJ correctly stated the issue, and the BRB misstated it. But if you look at the, in our brief, on page three, statement of the case, you'll notice that the employer, before the hearing, had conceded that he had a work-related hearing loss, except that the extent of disability to which he was entitled would be zero. We were prepared to pay for his hearing aids. He had a component of occupationally related hearing loss. It's just that the extent of disability was zero. And then after December 1999, he had no more injurious noise exposure. Therefore, his disability was fixed as of December 1999, but his entitlement to medical services, if he needed hearing aids, would be a consequence of that work-related noise that he had up until December 1999. Didn't that stipulation also say that the noises before 1999 had caused or aggravated some hearing loss? Yes. But that doesn't mean that he would have a more than zero percent impairment rating for his compensable hearing loss. The funny thing about the Longshore Act is that the rating is based on the lower frequencies. The lower frequencies are not associated with a noise-induced loss. So as the impairment rating goes up, it means that the lower frequencies unaffected by noise are changing and are getting worse. Well, notwithstanding, there can be some change in the upper frequencies affected by noise that would require treatment, let's say, with hearing aids, but does not translate into a PPD rating because there's zero percent impairment under the AMA guides. I didn't write the Act. That's just the way it is. Your Honor, I think I have, what, one minute left here. And I just want to remind the Court again that the issue here is that second step. Is there, claimant says there's no evidence in the record to rebut the presumption. We don't have a heavy burden to demonstrate on that. We don't have to show by a preponderance. There clearly is evidence from Dr. Hodgson, Dr. Trebb, indicating there was no injurious noise exposure after December 1, 1999. If so, we should be done. The claimant can have his hearing aids, but he gets no permanent partial disability award for the worsened hearing loss that he experienced after he last had injurious employment. Thank you very much. Okay. Thank you. You've saved some time. Thank you, Your Honor. Here we are discussing the year of 1999 over and over and over. The only time or the only reason that 1999 figures into this case is because of their position based on these noise surveys. There's never been a case, never been a case under Longshore where the claimant has filed one hearing loss claim in 2008 when he retires, and he's required to go back in 1999 to when he doesn't have hearing loss and prove that he got it after that. He can prove, and so says Dr. Trebb, Dr. Lippman, and Dr. Hodgson in this case, he can prove he has work-related hearing loss. He did everything right. He filed one hearing loss claim at the end of his employment, and all the doctors agree it's work-related hearing loss. The error in this case is making claimant go back to make. But I'm having trouble with this, partly because, I mean, we deal with Social Security all the time. I've had only a few Longshore cases. It sounds as though work-related hearing loss sufficient to require or entitle him to hearing aid and medical care is different from disability impairment hearing loss. Am I stating that correctly? But it's not. It's only so because the employer wants to not pay this guy the permanent partial disability he's entitled to. You mean consistent with their position, they could say he's not even entitled to hearing aids? I'm trying to follow you. The idea is if you buy their premise that he was exposed to injurious noise back in 1999, then he is entitled to medical. But back in 1999, the reason he didn't file a claim, he doesn't have hearing loss back then. So you and I are so far talking across purposes, and I'm just trying to understand the scheme of the act. Is it possible that someone has work-related hearing loss sufficient to entitle him to hearing aids and medical care? Yes. But that the work-related hearing loss is not high enough to entitle him to disability? Yes, precisely the issue in this case. Okay. So I am understanding the law. You are. Had Mr. Schissel retired in the year 2000, their position would be correct under the Law Insurance Act. Mr. Schissel did not. He worked until the year 2008. I got it. And one final comment. The noise surveys that we're talking about, again, he mentions that seven lift mechanics are tested in these noise surveys. That is absolutely false. Between the year 2000 and 2008, there is one mechanic tested on one day for eight hours over a span of eight years, 2,000 hours a year. That's 16,000 work hours. We have one day when a mechanic is tested. Okay. Did Dr. Hodgkin rely entirely on noise surveys? He relied entirely on noise surveys. The ALJ says no. This finding by Hodgkin, because it does not rely entirely on noise surveys, constitutes substantial evidence. And that's the error in this case. If you take a look at the evidence, and not just on what the ALJ did was look at the doctors, if you look at the evidence that he's relying on, he's entirely relying on noise surveys. No, he's not. I just read you the relevant language from his report, where he's relying in part on hearing tests. You disagree with his interpretation of the tests. I understand that. But he's relying on hearing tests. The lead case up until this point has said that Presbycus's age-related hearing loss, if it combines with work-related hearing loss, the entire disability... I know I got that, too. But you just read his report differently than the way I read his report. I understand you can disagree with his diagnosis, but I don't see how you can disagree with what he's saying in the sense of what it is that he's saying, if you believe it. He's saying, I'm looking at these tests, and the hearing loss that I'm seeing here that he's claiming is age-related, given the nature of the tests. That's what he says. And you can disagree with it, but that's what he says. Okay. Thank you, Your Honor. I thank both sides for your arguments. The case of Schessel v. Georgia Pacific is now submitted for decision.
judges: Goodwin, Trott, Fletcher